The opinion of the court was delivered by
GRUCCIO, J.A.D.
Plaintiff American Hydro Power Partners, L.P., appeals the portion of a Tax Court judgment which affirmed a 1987 assessment by defendant City of Clifton (City) on a hydroelectric power generating plant. Plaintiff owns and operates the plant on land leased from Dundee Water Power and Land Co. (Dundee). The lease requires plaintiff to pay all real estate taxes imposed on the improvements on the land. The City cross-appeals from the portion of the Tax Court judgment which invalidated a 1986 omitted added assessment, denied a motion to dismiss the portion of plaintiff’s complaint challenging the value figures in the 1987 regular assessment and amended plaintiff’s complaint to include a challenge to the 1987 assessment. The City also seeks a determination that regulations N.J.A.C. 18:12-10.1 through -10.4, promulgated pursuant to N.J.S.A. 54:4-lb, are invalid.
Plaintiff sued in the Tax Court alleging that the City’s assessment of its hydroelectric generation plant as real property for tax year 1987 was improper. It contends that the improvements are personal property and, alternatively, contends that if the improvements do not constitute personal property, they may be exempt as a dam pursuant to N.J.S.A. 54:30A-49 through -67.
The City counterclaimed, seeking to increase the 1987 assessment on three properties, including the property owned by Dundee and leased to plaintiff. The Tax Court judge dismissed two counts of the counterclaim which related to properties not involved here, but denied the motion for the property under appeal.
The City’s assessor filed an omitted added assessment with the Passaic County Board of Taxation (Board) for eight months *267 of 1986 after improvements were made to the property in question. The added tax bill was sent to Dundee, with a due date of November 30, 1987. On December 1, 1987, plaintiff appealed to the Board, seeking review of the omitted added assessment, which was denied by the Board.
Plaintiff appealed to the Tax Court, which granted its motion to amend its complaint to allege the second count that the assessed valuation was in excess of true value. The Tax Court judge consolidated the matters and permitted the Director of the Division of Taxation (Director) to intervene to defend against defendant’s assertion that the provisions of N.J.A.C. 18:12-10.1, et seq., were invalid. In his opinion, reported at 11 N.J.Tax 12, the Tax Court judge affirmed the 1987 regular assessment and invalidated the 1986 omitted added assessment.
The motion of New Jersey Business & Industry Association (NJB & IA) to appear amicus curiae was granted.
The property in question is part of the Dundee project, a hydroelectric generating facility consisting of machinery and equipment for the primary purpose of generating hydroelectric power to be sold to the Public Service Electric & Gas Co. It is located at the Dundee Lake Dam on the Passaic River in Clifton. While the main dam which traverses the Passaic River is not involved here, improvements were built on a second dam which runs between the river and canal and is part of the block and lot under consideration.
The relevant improvements consist of: (1) bellmouth intake conduits; (2) steel pipes in the canal wall; (3) butterfly valves; (4) downstream steel pipes anchored in bedrock; (5) reducing elbows; (6) turbine generator units; (7) draft tubes; (8) a trash rack; (9) a control enclosure; (10) a power transformer; (11) a utility metering panel; (12) a circuit breaker; and (13) disconnect switches and lightning arresters, which are summarized by the Tax Court judge as follows:
All of these items are attached to each other and/or to concrete foundation pads by flanges and bolts. The equipment was specifically designed to be easily removable and, in fact, has been removed in the past. The removal of this type of equipment can be effected quiekly and inexpensively. Removal entails *268 disconnecting wires and cables, unbolting the pieces of equipment from each other and from the foundation pads and lifting the equipment away by mobile crane.
American Hydro Power Partners, L.P. v. City of Clifton, 11 N.J.Tax at 16.
The property was assessed in 1987 at $65,700 for land and $1,185,600 for improvements, for a total of $1,251,300. Id. at 15.
Plaintiffs president, Peter A. McGrath, testified extensively about the type of equipment used in the Dundee project. He explained that the supplier who furnished turbines for the project sold plaintiff material from a previous hydro plant, including nine turbines originally used in a paper plant. Four turbines were installed at the Warrior Ridge project while the other five were sold. Plaintiff also bought a used unit for its Gilpin Falls, Maryland, project. McGrath also referred to plaintiff’s Pennsylvania project, where it installed steel sheeting from another location. All of the 11 turbine generator units at the Dundee project have been removed for repair at one time or another.
William I. Pentin, an expert in the field of design and construction of small hydroelectric power plants, testified that the equipment could be removed without material injury to itself or to the real property, that the equipment was designed to be removable and that it had been advertised as portable. In support of his thesis that the plant was personal property, he said that there was a big demand for used hydroelectric equipment and explained that equipment had been moved in some instances where water levels in rivers changed and in other cases where small plants were abandoned in favor of larger ones. Pentin testified that, except for certain pipes in the canal wall, the equipment could be removed and reinstalled at a different location in about 30 days at a cost of $15,000.
Plaintiff produced George S. Champlin, a valuation expert who, using the income approach, estimated the value of the improvements. Based on actual sales of electric power for calendar year 1987, he concluded that the economic gross *269 income was $220,738. He estimated expenses for the same period to be $153,728, which included $10,063 in land rent to Dundee. After making further calculations, he determined the value of the improvements to be $363,700 and the value of the land to be $469,800.
On the other hand, the City’s expert, Franklin Hannoch, estimated the true value of the property, both land and improvements, to be $4,191,000 on October 1, 1986. However, this estimate included three parcels of land, each with a value of $100,000 per acre. Since this parcel contains only 2.39 acres, the actual land value would be $239,000. He found the value of the improvements to be $2,875,000. Thus, the total value of land and improvements would be $3,114,000. He relied on the cost approach because the hydroelectric power plant was a special-purpose facility. He based his cost estimate on recently incurred actual costs of the improvements while his land value estimate was made by comparing five sales of vacant land within Clifton and East Clifton.
In his opinion, the Tax Court judge held that the improvements should be taxable as real property because plaintiff failed to establish, by a preponderance of the evidence, that the equipment was not “ordinarily intended to be affixed permanently to the real property,” as required under N.J.S.A. 54:4-la(3). As to the 1986 omitted added assessment, he found that none of the statutory requirements dealing with omitted assessment procedures were met by the City and that the failure to observe statutory guidelines for omitted or added assessments invalidates those assessments. American Hydro Power Partners, L.P., supra, 11 N.J.Tax at 22.
Regarding the valuation of the property, the judge rejected plaintiff’s expert’s reliance on the income approach, because of three errors made by the expert: (1) reliance solely on the income from the business based on gross sales, rather than on the income from the property; (2) inclusion of a land rent expense which is inconsistent with the requirement that the entire property, including all interest therein, be valued in fee *270 simple; and (3) failure to value the land and merely extrapolating value from the land assessment using a general average ratio. Id. at 26.
He accepted the City’s expert’s valuation using the cost approach method, but redetermined the land value because the expert had included three parcels of land instead of only the one that was before the court. Thus, he concluded that the value of the land was $239,000 and the value of the improvements was $2,875,000, for a total of $3,114,000. Based on the upper and lower limits of the common level range of the general average ratio for the taxing district for tax year 1987, as promulgated by the Director which were 40.41% and 29.47%, respectively, the judge concluded that the 40.18% ratio of true value to the assessment here was within the common level range. Id. at 28. Thus, he affirmed the assessment.
We now address the trial judge’s treatment of the 1987 assessment. N.J.S.A. 54:4-1 provides two exceptions to the taxation of real property:
Real property taxable under this chapter means all land the improvements thereon and includes personal property affixed to the real property or an appurtenance thereto, unless:
a. (1) The personal property so affixed can be removed or severed without material injury to the real property;
(2) The personal property so affixed can be removed or severed without material injury to the personal property itself; and
(3) The personal property so affixed is not ordinarily intended to be affixed permanently to real property; or
b. The personal property so affixed is machinery, apparatus, or equipment which is neither functionally essential to a structure the personal property is within or to which the personal property is affixed nor constitutes a structure itself.
The judge considered whether plaintiff’s 1987 assessments fell within the a. exception and found that they did not. He found that the equipment could be removed without material injury to either the property or the improvements. However, he determined that the equipment was ordinarily intended to be permanently affixed to real property. In doing so, he found that the testimony of plaintiff's expert fell short of establishing the third prong of the a. exception. In addition, the judge *271 added that plaintiffs president “testified that the market demand for small hydroelectric power plants such as the plant in issue took a sharp drop with the passage of the 1986 Tax Reform Act, which virtually eliminated tax shelters.” Id. at 24. Thus, the judge held that “the court may infer—and it does infer—that, viewed as of October 1, 1986 the decline in market demand for used hydroelectric power equipment strongly militates against a conclusion that such equipment is not ordinarily intended to be permanently annexed to real property.” Id. at 25.
In NYT Cable TV v. Borough of Audubon, 230 N.J.Super. 530, 534, 553 A.2d 1368 (App.Div.1989), we stated:
As we noted in Kearny Leasing Corp. v. Town of Kearny, 7 N.J.Tax 665 (App.Div.1985), “ ‘[sjince the judges assigned to the New Jersey Tax Court have special expertise, we will not disturb their findings unless they are plainly arbitrary or there is a lack of substantial evidence to support them.’ ” Id. at 667, quoting G & S Company v. Eatontown Bor., 2 N.J.Tax 94 (1980), aff'd 6 N.J.Tax 218, 220 (App.Div.1982). Applying that principle, we cannot fairly say that the trial judge went so wide of the mark that a mistake must have been made. P.T. & L. Const. v. Dept. of Transp., 108 N.J. 539, 560 [531 A.2d 1330] (1987). See Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 485-486 [323 A.2d 495] (1974); State v. Johnson, 42 N.J. 146, 162 [199 A.2d 809] (1964).
Consequently, here, although we may have reached a different conclusion from that reached by the Tax Court judge with regard to the a. exception, our limited scope of review constrains us to affirm his decision with regard to that exception.
Section b. of the statute contains a second exception. It appears that this subsection applies to all of plaintiff’s 1987 assessment other than the “site work,” which apparently does not fall within the Director’s definition of “machinery, apparatus, or equipment,” and the control enclosure and concrete pads, which may be structures themselves. However, this exception was not addressed by the Tax Court judge. Consequently, we remand this issue to the Tax Court for a full determination of the applicability of section b. to plaintiff’s assessment.
We fully understand that the recent decision of Texas Eastern Transp. Corp. v. Department of Treasury, Div. of Tax., 11 N.J.Tax 198, 210 (Tax Ct.1990), held that the definition *272 of “structure” included in the Director’s regulation, N.J.A.C. 18:12-10.1, does not apply to special purpose properties. We note that this opinion was heavily relied upon by the Tax Court judge in arriving at his conclusion that plaintiff’s dam was, in fact, subject to taxation. In Texas Eastern, the Tax Court gave examples of property having a “special purpose,” such as an oil refinery, a public utility transformer station and a radio transmission tower, and noted that the legislative intent was to include such properties within the definition of real property, rather than excluding them as machinery, apparatus or equipment. Id. at 209. We do not necessarily agree with the court’s examples of “special purpose property,” [1] but need not decide that issue since Texas Eastern did not determine a new definition for “structure.” However, we believe that even if a broader definition of “structure” should be applied to “special purpose” property, the dam involved here does not fall within that definition and thus, does not constitute a structure because it is neither “an assemblage of building or construction materials” nor does it have “the primary purpose of supporting, sheltering, containing or enclosing persons or property.”
We find all the issues raised by the City in its cross-appeal to be without merit. R. 2:ll-3(e)(l)(E).
Affirmed in part; remanded in part.

We note that the Legislature is currently considering Assembly bill A-5046 and its companion Senate bill S-3595, which would prevent the local property taxation of business machinery and equipment.