PER CURIAM.
Defendant, Township of Harrison, appeals from a judgment of the Tax Court reducing the 1996, 1997, and 1998 property tax assessments of plaintiff Isadore Spiegel’s 14.3 acre light industrial use property from $5,500,000 for 1996 and $5,177,500 for both 1997 and 1998, to $4,023,100, $4,061,800, and $4,138,000, respectively.
Defendant contends the judgment is not supported by substantial credible evidence in the record. It claims that in determining the property’s market rental value under the income capitalization valuation method, both plaintiffs valuation exj)ert and the trial judge inappropriately relied upon a lease for the subject property’s main building, a warehouse, which included an “unusual” provision requiring the tenant’s payment of “$170,000 per annum in real estate taxes” to plaintiff as “additional rent,” regardless of plaintiffs actual tax bill. Defendant claims that plaintiffs expert’s valuation was suspect because he failed to capitalize plaintiffs “additional gross income,” if any, from the $170,000 per annum after actual taxes in determining the property’s value, and that Judge Kahn’s findings that the warehouse lease was “unusual and not typical of the market place,” but nevertheless “provideldl some indication as to its rental value,” were inconsistent.
We disagree. Defendant’s assessment of plaintiffs valuation is of limited relevance, as Judge Kahn did not rely upon plaintiffs expert’s calculations. There is substantial credible evidence in the record that Judge Kahn rejected both parties’ experts’ market rent opinions, independently determining market rent and true value based upon the “sufficient sampling” of eleven lease compa-rables provided. We affirm substantially for the reasons set forth in Judge Kahn’s written opinion, which is reported at 18 N.J.Tax 416 (Tax 1999). We add the following additional observations.
We need not reiterate the facts or summarize the judge’s reasoning, as they are clearly set forth in his opinion; however, we again note that the lease between the landlord-taxpayer and tenant contained a provision described as both “unusual and not typical of the market place.” Id. at 423. That provision fixed the tenant’s responsibility for real estate tax reimbursement at *294 $170,000.[1] As interpreted, the provision required the landlord to assume the obligation to pay, without reimbursement, any taxes in excess of the $170,000, and to receive the benefit of a tax obligation less than that amount. This was obviously a negotiated provision and reflected the business judgment of the parties to the lease as to allocation of the obligation for taxes and which party would bear the burden of or benefit from any amount greater than or lesser than the strike figure of $170,000.
What is readily apparent from Judge Kahn’s analysis is that his approach throughout was consistent. In concluding that the market rent was on a net basis, ibid., he further concluded that “no effective tax rate is added to the overall capitalization rate of 10.52%.”[2] Id. at 427. That is, he did not “load” the capitalization rate to reflect a tax obligation. In sum, he defined the nature of the transaction and applied applicable principles accordingly. In reaching his ultimate conclusion as to valuation, the judge found “the income capitalization approach to be the only reliable method of valuation in this ease,” id. at 421, and delineated the formula for determining property value under the income approach as follows:
*295 market rent
x square footage
potential gross income (PGI)
— vacancy and collection losses
effective gross income (EG1)
- operating expenses
net operating income (NOI)
+ capitalization rate[3]
value of property
Id. at 425-26.[4] We can find little fault with this approach.
While the unique lease provision, and what may have been a wise business decision, may enhance (or detract) from the value of the property on transfer, the value to be determined for assessment purposes is the value of the fee simple with the provision attached on the date of assessment. See, e.g., Cohn v. Livingston Township, 18 N.J.Tax 429, 437-38 (Tax 1999); Lenal Props., Inc. v. City of Jersey City, 18 N.J.Tax 405, 407 (Tax 1999), aff'd, 18 N.J.Tax 658 (App.Div.), certif. denied, 165 N.J. 488, 758 A.2d 647 (2000). That value was determined by the trial judge utilizing an appropriate, reasonable, and acceptable methodology.
 Certain general principles of law applicable to appeals are particularly relevant here. We pay great deference to the special expertise of New Jersey Tax Court judges, and will not disturb their findings unless plainly arbitrary or unsupported by substantial credible evidence in the record. First Republic Corp. of Am. v. Borough of East Newark, 17 N.J. Tax 531, 536-37 *296 (App.Div.1998), certif. denied, 157 N.J. 647, 725 A.2d 1128 (1999); Hartz Mountain Dev. Co. v. Secaucus, 16 N.J.Tax 474, 479 (App.Div.1997); Global Terminal & Container Serv. v. City of Jersey City, 15 N.J.Tax 698, 702-03 (App.Div.1996); Pine Street Mgmt. Corp. v. City of East Orange, 15 N.J.Tax 681, 686 (App.Div.1995), certif. denied, 144 N.J. 172, 675 A.2d 1121 (1996). These general principles are especially appropriate when a transaction is unique or, as described here, “not typical of the market place.” We conclude that Judge Kahn’s consideration of this transaction reflected an appropriate and measured analysis to reach a determination of valuation. We find Iris determination to be well-supported by the record.
Affirmed.

 The provision states in relevant part:
2. A. RENT
The annual rent for the five (5) year term is $346,476 per annum to be paid in equal monthly installments from the first day of each month throughout the term of this lease without any setoff, abatement, adjustment or deduction unless otherwise provided for in this agreement.
B. REAL ESTATE TAXES
The Tenant shall pay as additional rent, the sum of $136,850.00 per annum in real estate taxes if the Tenant only occupies 260,000 square feet and $170,000 per annum in real estate taxes if the Tenant occupies 322,670 square feet. This contribution shall not change regardless of the actual amount of real estate taxes, regardless if they are higher or lower. The Tenant shall pay l/\2 of the above figure each month along with the monthly payment of rent.

 This capitalization rate-was stipulated to by the parties.

 The judge distinguished rental income analyses concerning “gross” or “modified gross” leases, where, because the landlord pays real estate taxes without reimbursement by the tenant, “the effective tax rate is added to the overall capitalization rate to account for the landlord’s real estate tax expense,” from those involving “net” leases, where, because the tenant is responsible for taxes, the effective tax rate is not added to the capitalization rate to reduce the property's value by decreasing its net income stream. Id at 427.

 The judge also concluded that N.J.S.A. 54:51A-6 (“Chapter 123”) applied, a finding not challenged on this appeal.